JDG:CMP/AMC
F.#2011R01474

*12 M 529*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

LUIS ADORNO,

              Defendant.

- - - - - - - - - - - - - - X

<u>To Be Filed Under Seal</u>

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
<u>FOR ARREST WARRANT</u>

(18 U.S.C § 666(a)(1)(B))

EASTERN DISTRICT OF NEW YORK, SS:

       NAUSHAUN RICHARDS, being duly sworn, deposes and states that he is a Special Agent of the Federal Bureau of Investigation duly appointed according to law and acting as such.

       Upon information and belief, in or about and between January 2008 and December 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant LUIS ADORNO, together with others, being an agent of a local government agency, to wit: the New York City Department of Housing Preservation and Development ("HPD"), which agency received in excess of $10,000 under one or more Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance in one or more one-year periods, did knowingly, intentionally and corruptly solicit and demand for the benefit of ADORNO, and accept and agree to accept, one or more things of value, to wit:

payments and business interests, from other persons, to wit: real estate developers and contractors with significant business with HPD, intending to be influenced and rewarded in connection with business and one or more transactions and series of transactions of HPD involving things of value of $5,000 or more.

(Title 18, United States Code, Sections 666(a)(1)(B), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent of the FBI, duly appointed according to law and acting as such. I have been an FBI Special Agent for approximately 13 years and am currently assigned to Squad C-24, a joint task force comprising FBI agents and New York City Police Department officers charged primarily with the investigation of Eurasian and Eastern European organized crime in the New York metropolitan area. Such investigations also often involve white collar and public corruption offenses. In the course of those investigations, I have conducted or participated in physical and electronic surveillance, deployment of undercover agents and confidential informants, execution of search warrants

---

[1]    Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all of the relevant facts and circumstances of which I am aware. In addition, when I rely on statements made by others, such statements are set forth in part and in substance unless otherwise indicated.

and analysis of telephone and financial records.  I have also debriefed numerous cooperating witnesses and confidential sources, including those described below.  I have personally participated in this investigation by, among other things, conducting surveillance, directing the activities of cooperating witnesses, interviewing other witnesses, executing search warrants, and reviewing financial and property records, among other investigative techniques.  I am also familiar with the facts and circumstances of this investigation from information provided to me by other agents and investigators.

<u>The Department of Housing Preservation and Development</u>

2.      During the relevant time period, HPD was a municipal public agency created under Chapter 42 of the New York City Charter and regulated under Title 28 of the Rules of the City of New York (the "NYC Rules") to provide affordable housing to the residents of New York City.

3.      As the largest municipal provider of affordable housing in the country, HPD's purpose was to provide affordable housing in various forms to the residents of New York City.  HPD ran a number of programs that were intended to develop affordable housing, including, among others: (1) the Neighborhood Entrepreneurs Program ("NEP"), which was intended to enable neighborhood-based private property managers to manage and own clusters of occupied and vacant New York City-owned buildings as

affordable housing; (2) the Neighborhood Redevelopment Program ("NRP"), whereby HPD conveyed clusters of occupied and vacant New York City-owned buildings to designated not-for-profit organizations for rehabilitation and operation as affordable rental housing; and (3) New Construction, which managed various programs that offered vacant and underutilized New York City property holdings for residential and mixed-use development.

4. During the relevant time period, HPD was a local government agency that received millions of dollars under Federal programs involving grants, contracts, subsidies, loans, guarantees, insurance and other forms of Federal assistance. HPD received in excess of $10,000 of such funds in one or more one-year periods.

5. Pursuant to Title 28 of the NYC Rules, HPD was charged with selecting real estate developers, or "sponsors," to develop NEP and NRP projects. The NYC Rules provided that "HPD may select a Sponsor for a Project by any method which HPD determines will best further the purposes of the Program, including, without limitation, pursuant to a request for qualifications process, pursuant to a request for proposals process, selection from a pre-qualified list or, in the discretion of HPD, by a direct designation of an entity judged by HPD to be suitable for the task."

4

6.    After HPD selected a developer for a particular project, HPD and the developer selected a general contractor responsible for the construction, rehabilitation and renovation of the properties involved in that project.

7.    HPD operated throughout New York City, including within the Eastern District of New York.

### The Defendant

8.    From in or about 1990 to April 2012, LUIS ADORNO was employed by HPD in various capacities.  From in or about and between March 2005 to April 2012, ADORNO was a Supervisory Construction Project Manager for HPD's Department of Architecture and Construction Engineering ("DACE").[2]  As part of his responsibilities, ADORNO personally conducted inspections of HPD construction projects and also supervised others who conducted such inspections, including construction projects under various HPD programs, such as NEP, NRP and New Construction.

---

[2]    During the relevant time period, DACE was reorganized within HPD so that its duties and responsibilities were carried out under the Division of Construction Services and Division of Architecture and Engineering ("DCS-DAE").  ADORNO's title remained the same and responsibilities remained largely the same following the reorganization.

## The Defendant's Acceptance of Bribes from a
## Real Estate Developer and from a Construction Contractor

9.   At all relevant times, the cooperating witness ("CW") was a real estate developer and general contractor who had been awarded various construction and real estate development contracts with HPD.[3]  At all relevant times, "John Doe" was a construction contractor who worked on HPD construction projects, including projects being developed by the CW.

10.   In or about late 2007 or 2008, John Doe paid approximately $100,000 in checks made out to the CW's real estate development company (the "REDC").  The CW advised that he and ADORNO agreed that the $100,000 paid by John Doe represented a 30 percent equity stake in the REDC, from which ADORNO could benefit after ADORNO stopped working for HPD.  ADORNO never reimbursed John Doe for the approximately $100,000 that he paid to the CW.  The CW advised that he understood that John Doe paid the

---

[3]     In 2011, the CW pled guilty, pursuant to a cooperation agreement, to RICO conspiracy in violation of 18 U.S.C. § 1962(d), involving predicate acts of extortion, bribery, wire fraud and money laundering conspiracy, and substantive counts of wire fraud conspiracy and money laundering conspiracy, in connection with the CW's solicitation and receipt of kickbacks from a general contractor with respect to certain HPD projects and payment of bribes to a high-ranking HPD employee in return for the awarding of multimillion dollar contracts with HPD.  In exchange for his cooperation, the CW is hoping to receive leniency at sentencing.  The CW's information has been corroborated by, among other things, bank records, contracts, property records and other documents; consensual recordings; and information from other cooperating witnesses and confidential sources.

approximately $100,000 so that ADORNO would assist John Doe in obtaining additional work from HPD.  The CW has further advised that ADORNO encouraged the CW to hire John Doe as a contractor for one of the CW's HPD projects.  I have reviewed records of John Doe's company's business checking account and cancelled checks from that account corroborate the approximately $100,000 payment to the CW's REDC.  Similarly, a former high-ranking HPD employee who is currently cooperating with the government[4] has advised that during the relevant time period, it was not uncommon for ADORNO to advocate on behalf of certain developers or contractors, including John Doe's company, when HPD was in the process of selecting developers or contractors for new HPD projects.

     11.  Because public filing of this document could result in a risk of flight by the defendant, as well as jeopardize the government's investigation, your deponent

---

[4]     Earlier this year, this former HPD employee pleaded guilty, pursuant to a cooperation agreement, to racketeering conspiracy in violation of 18 U.S.C. § 1962(d), involving predicate acts of extortion, bribery, wire fraud, money laundering and money laundering conspiracy, as well as a substantive count of federal bribery in violation of 18 U.S.C. § 666(a)(1)(B), in connection with, among other things, his receipt of cash, property and other items of value as bribes from various sources who sought to influence the former HPD employee in his capacity as an HPD official.  In exchange for his cooperation, the former HPD employee is hoping to receive leniency at sentencing.  His information has been corroborated by, among other things, bank records, contracts, property records and other documents; consensual recordings; and information from other cooperating witnesses and confidential sources.

respectfully requests that this complaint, as well as any arrest warrant issued in connection with this complaint, be filed under seal.

WHEREFORE, your deponent respectfully requests that a warrant issue for the arrest of the defendant LUIS ADORNO so that he may be dealt with according to law.

NAUSHAUN RICHARDS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
4th day of June, 2012

'GE

8